UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOSEPH MCLAUGHLIN, JR.,

       Plaintiff,

v.                                                     CASE NO. 3:13-cv-1136-J-34MCR

CAROLYN W. COLVIN, Commissioner
of the Social Security Administration,

       Defendant.
_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative

decision denying his application for Supplemental Security Income ("SSI").

Plaintiff alleges he became disabled on July 17, 1996.  (Tr. 22, 111-16.)  On

February 27, 2012, a hearing was held before an Administrative Law Judge

("ALJ"), at which Plaintiff was not represented by counsel.  (Tr. 38-64.)  On June

21, 2012, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 19-37.)

Plaintiff submitted a request for review which was denied on July 24, 2014.  (Tr.

1-4.)  Accordingly, the ALJ's decision is the final decision of the Commissioner.

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations.  A party may respond to another party's objections within 14 days after being served with a copy."  Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); M.D. Fla. R. 6.02(a).  "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).

### I.      Summary of the ALJ's Decision

In reaching his decision, the ALJ followed the five step sequential evaluation process provided by 20 C.F.R. § 416.920(a)(4).  (Tr. 20-30.)  At the first step, the ALJ found Plaintiff had not engaged in substantial gainful activity since October 18, 2010.  (Tr. 24.)  At the second step, the ALJ found that Plaintiff suffered from two severe impairments: a history of traumatic brain injury and a mood disorder.  (*Id.*)  However, at the third step, the ALJ determined Plaintiff's impairments did not meet or medically equal the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 24-25.)  Accordingly, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found plaintiff was able to perform:

> [A] full range of work at all exertional levels but with the following nonexertional limitations: no climbing ladders, ropes or scaffolds; no concentrated exposure to moving mechanical parts or work at unprotected heights.  The claimant is limited to performing simple routine repetitive tasks, with occasional contact with co-workers and the general public.  The claimant is able to relate adequately to supervisors.  Changes in the workplace should be infrequent and gradually introduced.

(Tr. 26.)  At the fourth step, the ALJ found Plaintiff had no past relevant work.  (Tr. 30.)  However, at the fifth step, the ALJ relied on the testimony of a vocational expert and found there were jobs which existed in significant numbers in the national economy which Plaintiff was able to perform based on his age, education, work experience, and RFC.  (Tr. 30-31.)  Specifically, the ALJ found Plaintiff was able to perform the duties of a Marker (DOT No. 209.587-034), a

silver wrapper (DOT No. 318.687-018), and a cleaner/polisher (DOT No. 709.687-010).  (Tr. 31.)  Accordingly, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act.  (*Id.*)

Plaintiff is appealing the Commissioner's decision finding he has not been disabled since July 17, 1996.  Plaintiff has exhausted his available administrative remedies, and the case is properly before the Court. The undersigned has reviewed the record, the briefs, and the applicable law.  For the reasons stated herein, it is respectfully **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**.

## II.    Issue on Appeal

Plaintiff raises one issue on appeal.  Specifically, Plaintiff asserts the ALJ erred in failing to obtain medical evidence regarding his intelligence quotient ("IQ") prior to an accident in 1996 in which Plaintiff was hit by a bus.  (Doc. 23 at 20-26.)  Plaintiff explains he currently has a borderline IQ of 74 as a result of injuries sustained from the accident.  (*Id.* at 22.)  Plaintiff argues evidence of his IQ prior to the accident would have allowed him to satisfy the requirements of Listing 12.02, "Organic Mental Disorders," if it were available.  (*Id.* at 26.)  Therefore, Plaintiff concludes the ALJ failed to meet his duty to fully and fairly develop Plaintiff's medical record.  (*Id.*)  The Commissioner responds by arguing Plaintiff himself has not provided the alleged evidence in support of his claim of error, and there is no indication such evidence exists.  (Doc. 26 at 5).  The Commissioner further argues any failure to obtain such evidence was without

3

prejudice to Plaintiff because Plaintiff has not established he otherwise satisfies all elements of Listing 12.02.  (*Id.* at 6-9.)  Upon review, the Court finds no error in the ALJ's failure to obtain the alleged evidence.

### III.    Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## IV.    Analysis

Upon review of the record, the Court finds the ALJ did not err in failing to obtain evidence of Plaintiff's IQ prior to the 1996 accident.  Plaintiff is correct in observing the ALJ has a duty to fully and fairly develop a claimant's medical record in adjudicating a claim of disability. [2] *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).  However, "[t]he ALJ's duty to develop the record is not so sweeping that it can relieve an applicant entirely of his own responsibility for supporting his claim."  *Griffin v. Barnhart*, 198 F. App'x 561, 564 (7th Cir. 2006).  Rather, "[t]he burden is on the claimant to show that [he] is disabled and, therefore, [he] is responsible for producing evidence to support [his] application."  *McCloud v. Barnhart*, 166 F. App'x 410, 418 (11th Cir. 2006).  Where, as here, the claimant contends he meets the requirements of a listed impairment, "the burden is on the claimant to present specific medical findings that meet the various tests listed under the description of the applicable impairment."  *Wilkinson on Behalf of Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987).

As the Commissioner argues, Plaintiff has neither provided records of his IQ prior to 1996, nor an indication that such evidence exists.  Accordingly, the Court agrees with the Commissioner that the responsibility to obtain such

---

[2] Specifically, the Code of Federal Regulations provides that the Social Security Administration will develop a claimant's complete medical history for at least the 12 months preceding the month in which the claimant files his application, unless there is reason to believe that development of an earlier period is necessary. 20 C.F.R. § 416.912(d).

evidence, if it could be obtained, fell within Plaintiff's obligation to provide evidence in support of his claim rather than the ALJ's obligation to fully and fairly develop the record.  *See McCloud*, 166 F. App'x at 418 ("To the extent McCloud contends that the ALJ should have obtained records for treatment of which there is no evidence in the record, McCloud was in the best position to inform the ALJ as to her treatment history, and by failing to do so, she failed to meet her burden."); *see also Figueroa v. Colvin*, No. CV 12-06742-OP, 2013 WL 1859073, at *2 (C.D. Cal. May 2, 2013) ("Of course, an ALJ has no duty to find evidence where no such evidence exists.").  The Court notes that the record of Plaintiff's administrative hearing reflects the ALJ inquired whether Plaintiff had an opportunity to review his medical evidence, and whether any other evidence should be included.  (Tr. 43.)  In response, Plaintiff and his mother indicated additional records were available at Shands Medical Center in Live Oak, Shands Medical Center in Gainesville, the Union County Health Department, the Bradford County Health Department, the Bradford County Hospital, and Meridian Behavioral Healthcare.  (Tr. 6-8.)  The record further reflects that the ALJ attempted to obtain additional records from these locations.  (Tr. 539-60.)  Accordingly, the Court finds the ALJ did not fail to meet his duty to fully and fairly develop Plaintiff's medical record.

In addition, it appears that any failure to obtain evidence of Plaintiff's IQ prior to 1996 would not constitute reversible error in this case as Plaintiff has not demonstrated a prejudicial effect.  *See Brook v. Astrue*, 3:08-CV-265-J-MCR,

2009 WL 2731343 (M.D. Fla. Aug. 26, 2009) ("[E]ven when the Court determines the ALJ failed in his duty to fully and fairly develop the record, a plaintiff will only be entitled to a remand upon a showing of prejudice.").  Plaintiff argues failure to obtain evidence of his IQ prior to 1996 was prejudicial to his case because such evidence would have provided a basis for finding he met the requirements of Medical Listing 12.02, "Organic Mental Disorders."  (Doc. 23 at 23-24.)  However, as the Commissioner argues, Plaintiff has not demonstrated he meets the requirements of Listing 12.02 even if the alleged evidence were available.  (Doc. 26 at 6-9.)

Listing 12.02 pertains to organic mental disorders, and psychological and behavioral abnormalities associated with a dysfunction of the brain.  The listing provides, in relevant part:

> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> A.  Demonstration of a loss of specific cognitive abilities or affective changes and the medically documented persistence of at least one of the following:
>
> 1.  Disorientation to time and place; or
>
> . . . .
>
> 7.  Loss of measured intellectual ability of at least 15 I.Q. points from premorbid levels or overall impairment index clearly within the severely impaired range on neuropsychological testing, e.g., the Luria–Nebraska, Halstead–Reitan, etc.;
>
> AND

B.  Resulting in at least two of the following:

1.  Marked restriction of activities of daily living; or

2.  Marked difficulties in maintaining social functioning; or

3.  Marked difficulties in maintaining concentration, persistence, or pace; or

4.  Repeated episodes of decompensation, each of extended duration;

OR

C.  Medically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.  Therefore, Listing 12.02 allows a claimant

to satisfy its requirements by one of two routes.  First, a claimant may satisfy the

listing by meeting the requirements of subsections A and B.  Alternatively, a

claimant may satisfy the listing by meeting the requirements of subsection C.

*See Cannon v. Astrue*, No. 4:08-CV-160-D, 2010 WL 902485, at *9 (E.D. N.C.

Mar. 11, 2010) (applying the terms of Listing 12.02 where the plaintiff relied on a loss of measured intellectual ability).

To the extent Plaintiff argues evidence of his IQ prior to 1996 would demonstrate he meets the requirements of subsections A and B, the Court disagrees.  The ALJ discussed the requirements of subsection B in his decision, and found Plaintiff's mental impairments did not meet its criteria.  (Tr. 24-25.)  Specifically, the ALJ found Plaintiff's mental impairments caused no more than moderate restrictions in his activities of daily living; moderate difficulties in social functioning; mild difficulties in concentration, persistence, and pace; and no episodes of decompensation.  (*Id.*)  In support of these findings, the ALJ relied on the Function Reports completed by Plaintiff and Ms. Jacque Tatum.  (Tr. 24-25, 142-49, 166-72.)  The ALJ noted the reports indicated Plaintiff was able to maintain his hygiene, take care of his dog, prepare his own meals, perform household chores, clean dishes, take care of the lawn, spend time with his friends, take walks, drive, go shopping, and visit with his girlfriend.  (Tr. 24.)  Plaintiff does not contest the ALJ's findings with respect to subsection B, or argue the ALJ's findings are unsupported by substantial evidence.  (*See* Doc. 23 at 23.)  Therefore, it appears Plaintiff was not prejudiced by failure to obtain evidence of his IQ prior to 1996 to the extent Plaintiff argues such evidence would indicate he satisfied subsections A and B of Listing 12.02.

The Court also disagrees with Plaintiff to the extent Plaintiff argues evidence of his IQ prior to 1996 would demonstrate that he met the requirements

of subsection C.  Plaintiff argues it is facially apparent that he suffers from a

residual disease process making it likely that a change in his environment would

cause him to decompensate, and that he has demonstrated a current history of

m one year's inability to function outside of a highly supportive living

arrangement.[3]  (Doc. 23 at 25.)  However, contrary to Plaintiff's position, the

evidence of record indicates that Plaintiff lives alone.  (Tr. 142, 166.)  While the

record states Plaintiff receives some degree of assistance from his family and

friends, as the ALJ noted, Plaintiff is able to maintain his hygiene, prepare simple

meals, and perform various household chores.  This evidence is not consistent

with a finding that Plaintiff is unable to live outside of a highly supportive living

arrangement.  *Gonsalves v. Astrue*, No. CIV. 09-181-B-W, 2010 WL 1935753, at

*4 (D. Me. May 10, 2010) *report and recommendation adopted*, No. CIV.09-181-

B-W, 2010 WL 2540945 (D. Me. June 16, 2010) ("[A] 'highly supportive living

arrangement' is something other than living with one's parents while taking care

of most of one's personal needs and making substantial contributions to the

household without a high degree of supervision . . . it refers to shelters or group

homes, inpatient psychiatric treatment, or an inability to live on one's own.").

---

[3] While Plaintiff contends he suffers from a residual disease process which makes it likely that a change in his environment would cause him to experience episodes of decompensation, the ALJ found Plaintiff would be able tolerate gradual and infrequent changes in the workplace.  (Tr. 26-30.)  In making this determination, it appears the ALJ relied on the consultative examinations of Dr. Janet Humphreys and Dr. Eftim Adhami.  (Tr. 27-28.)  The ALJ also appears to have relied on the opinion evidence of State Agency consultants Lee Reback, Psy. D., P.A., and Pauline Hightower, Psy. D.  (Tr. 28-29.)  Plaintiff offers no argument as to how the ALJ erred in relying on this evidence, and cites no evidence contrary to the ALJ's finding.

Accordingly, the Court finds Plaintiff was not prejudiced by a lack of evidence regarding his IQ in 1996 to the extent Plaintiff argues such evidence would demonstrate he satisfied the provisions of 12.02 subsection C.

## V.      Conclusion

Plaintiff asserts the ALJ erred in failing to obtain evidence reflecting his IQ prior to an accident which occurred in 1996.  However, Plaintiff has offered no indication that such evidence exists.  In addition, for the reasons discussed herein, Plaintiff has not demonstrated he was prejudiced by failure to obtain the alleged evidence.

Accordingly, it is respectfully **RECOMMENDED** that:

1.      The Commissioner's decision be **AFFIRMED**.

2.      The Clerk of Court be directed to enter judgment accordingly and close the file.

**DONE AND ENTERED** at Jacksonville, Florida, on December _30th_, 2014.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record